# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **TONY McGRUDER, # B55470,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-cv-00255-JPG |
| | ) |
| **LT. T VEATH, C/O LT. T LEE,** | ) |
| **LORI OAKLEY, SARAH JOHNSON,** | ) |
| **RICHARD HARRINGTON,** | ) |
| **S. A. GODINEZ,** | ) |
| **and UNKNOWN PARTIES,** | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Tony McGruder, an inmate who is currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this action pursuant to 42 U.S.C. § 1983 for the alleged deprivations of his constitutional rights at Menard Correctional Center ("Menard") (Doc. 1). Following a fight between a dozen inmates in Menard's chow hall on December 9, 2012, Plaintiff was charged with numerous rule violations stemming from his involvement in the altercation. Plaintiff denies any involvement. Nevertheless, he was found guilty of the rule violations at an allegedly unfair disciplinary hearing and punished with six months in segregation. As part of his punishment, Plaintiff was forced to share a cell with an inmate he was accused of fighting. Other inmates were required to do the same. Plaintiff endured this punishment for nearly six months, from December 17, 2012, until June 3, 2013, while three other inmates were allegedly murdered by their cellmates during this same time period.

In connection with these events, Plaintiff now sues eight prison officials for violating his rights under the First, Eighth, and Fourteenth Amendments. He also asserts a conspiracy claim

Page **1** of **15**

under 28 U.S.C. §§ 1985 and 1986. The defendants include Lieutenant Veath (adjustment committee chairman), Lieutenant Lee (adjustment committee member), Jane/John Doe (unknown placement officer), Jane/John Doe (unknown internal affairs officer), Lori Oakley (grievance officer), Richard Harrington (warden), Sarah Johnson (administrative review board member), and S. A. Godinez (Illinois Department of Corrections ("IDOC") Director). Plaintiff seeks declaratory judgment, monetary damages, and injunctive relief.

Plaintiff filed this action on March 4, 2015, without paying a filing fee or filing a motion for leave to proceed *in forma pauperis* ("IFP motion"). The same day, the Clerk of Court sent him a letter (Doc. 3) advising Plaintiff of his obligation to remit payment of the $400.00 filing fee or a properly completed IFP motion within thirty days (on or before April 3, 2015). Plaintiff was warned that the case would be dismissed if he failed to take action. On April 6, 2015, Plaintiff filed a motion seeking an extension of the deadline, and his motion was granted. The deadline was extended until May 9, 2015. Plaintiff's timely IFP motion followed and has been granted. The complaint is now ripe for review under 28 U.S.C. § 1915A.

## Merits Review Under 28 U.S.C. § 1915A

Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). The Court is required to dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b). The complaint survives preliminary review under this standard.

**The Complaint**

On December 9, 2012, a fight broke out in Menard's chow hall (Doc. 1, p. 5). Approximately one dozen inmates were involved. Plaintiff was placed in segregation following the fight, along with eleven or twelve other inmates. He was issued a disciplinary ticket that cited the following rule violations: 101 – aiding, abetting, attempt, solicitation, or conspiracy; 403 – disobeying a direct order, and; 105 – dangerous disturbance. Plaintiff maintains that he was not involved in the fight.

After receiving the ticket, Plaintiff immediately submitted a written request to call witnesses at his prison disciplinary hearing. He placed this written request in the prison mail. Plaintiff then prepared a written statement requesting a continuance and the opportunity to call C/O Hormann as a witness at his disciplinary hearing. He handed this written statement to the adjustment committee at his disciplinary hearing on December 17, 2012. Neither of his requests was granted. He was found guilty of the rule violations following an allegedly unfair disciplinary hearing. Plaintiff was punished with six months of segregation, demotion to C-grade status, and commissary restriction (Doc. 2, p. 6).

For the next six months, Plaintiff was placed in a segregation cell with Antoine Brantley, one of the inmates he was accused of fighting (Doc. 1, p. 6). Of the eleven other inmates who were involved in the same fight, eight were forced to share a cell with an enemy. They were housed in cells with steel doors and left to fight or kill one another. Plaintiff contends that enemies "were strategically and purposely placed in the cell with each other for the sole purpose of . . . doing 'great bodily harm or causing great bodily harm to one . . . another" (Doc. 1, p. 6).

On February 5, 2013, Plaintiff filed a grievance challenging the results of the disciplinary hearing and his placement in a cell with Antoine Brantley (Doc. 1, p. 7). He received no

response and submitted a written inquiry about the status of the grievance the following month (Doc. 1, p. 8).  He learned in mid-March 2013 that the grievance was denied as untimely.  Plaintiff attributes this to internal delays in processing his grievance.  He appealed, but an Administrative Review Board member, Sarah Johnson, was allegedly "in cahoots" with Menard officials and denied the appeal.

Plaintiff was released from segregation on June 3, 2013. He later obtained a signed affidavit from C/O Hormann, confirming that he was not involved in the fight on December 9, 2012 (Doc. 1, p. 8).  The law library supervisor confiscated the affidavit.  An internal affairs officer, Lieutenant Munge,[1] investigated its authenticity by interviewing Plaintiff about it on June 3, 2014 (Doc. 1, p. 9).  During the interview, Lieutenant Munge told Plaintiff that he did not intend to return the affidavit, unless ordered to do so by the warden.  But rather than questioning him about the authenticity of the document, Lieutenant Munge interrogated Plaintiff about his involvement in a security threat group.  Plaintiff maintains that Lieutenant Munge was posturing to issue him a ticket and place him in segregation, in order to prevent him from filing this lawsuit (Doc. 1, p. 10).  Within four days, two internal affairs officers returned the affidavit to Plaintiff.

## Discussion

After carefully reviewing the allegations, the Court finds it convenient to divide the complaint into six counts that are consistent with Plaintiff's characterization of the same.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

> **Count 1:** Defendants Veath and Lee deprived Plaintiff of a protected liberty interest without due process of law, in violation of the Fourteenth Amendment, when they punished him with six months in

---

[1] Lieutenant Munge is not named as a defendant in this action.

|  |  |
|---|---|
|  | segregation following an unfair disciplinary hearing on false disciplinary charges (*see* Doc. 1, pp. 11-13 (Counts I and II)); |
| **Count 2:** | Defendants Jane/John Doe (placement officer) and Jane/John Doe (internal affairs officer) failed to protect Plaintiff from an unreasonable risk of harm when they placed him in a cell for six months with an inmate he was accused of fighting (*see* Doc. 1, pp. 13-15 (Count III)); |
| **Count 3:** | Defendants Harrington, Oakley, Johnson, and Godinez violated Plaintiff's Fourteenth Amendment due process rights when they denied his grievances and thereby failed to take any action to correct the constitutional violations (*see* Doc. 1, pp. 15-19 (Counts IV and V)); |
| **Count 4:** | Defendants interfered with Plaintiff's access to the courts when they confiscated C/O Hormann's affidavit and delayed its return to Plaintiff (Doc. 1, pp. 9-10); |
| **Count 5:** | Defendants Veath and Lee violated Plaintiff's right to equal protection of the law when they denied him an opportunity to call witnesses at his disciplinary hearing because of his race (*see* Doc. 1, pp. 19-21 (Count VI)); and |
| **Count 6:** | Defendants conspired to violate Plaintiff's constitutional rights, in violation of 28 U.S.C. §§ 1985 and 1986 (Doc. 1, p. 1). |

As discussed in more detail below, Counts 1, 2, and 5 survive review under Section 1915A. Counts 3, 4, and 6 do not and shall be dismissed without prejudice.

**Count 1**

Plaintiff shall be allowed to proceed with his Fourteenth Amendment claim against Defendants Veath and Lee for depriving him of a protected liberty interest without due process of law (**Count 1**). Plaintiff claims that he was punished with six months in segregation under conditions that presented an atypical and significant hardship, based on false disciplinary charges and an unfair disciplinary hearing.[2]

---

[2] Plaintiff was also punished with a six-month demotion to C-grade status and commissary restriction, but no claim arises from either punishment. *See, e.g.*, *Thomas v. Ramos*, 130 F.3d 754, 762 n. 8 (7th Cir.

Standing alone, the receipt of a false disciplinary ticket does not give rise to a due process violation. This is because "due process safeguards associated with prison disciplinary proceedings are sufficient to guard against potential abuses[,] [and a] hearing before a presumably impartial Adjustment Committee terminates an officer's possible liability for the filing of an allegedly false disciplinary report." *Hadley v. Peters*, 841 F. Supp. 850, 856 (C.D. Ill. 1994), aff'd, 70 F.3d 117 (7th Cir. 1995) (citations omitted).

But Plaintiff also claims that he was denied a fair and impartial disciplinary hearing. To satisfy due process, an inmate facing disciplinary charges must be given: (1) advance written notice of the charges against him; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence in his defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988). In addition, the decision of the adjustment committee must be supported by "some evidence." *Black v. Lane*, 22 F.3d 1395 (7th Cir. 1994). Plaintiff complains of a single violation of these procedural safeguards at his disciplinary hearing before Defendants Veath and Lee, i.e., his right to call witnesses. This allegation at least suggests that Plaintiff's disciplinary hearing may have violated the procedural safeguards described in *Wolff*.

Even if Plaintiff's right to due process was violated at the disciplinary hearing, an "inmate's liberty interest in avoiding segregation is [still] limited." *Hardaway v. Meyerhoff, et al.*, 734 F.3d 740 (7th Cir. 2013) (quoting *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). A protected liberty interest arises only if Plaintiff's confinement in segregation

---

1997) (and cases cited therein) (no protected liberty interest in demotion to C-grade status and loss of commissary privileges).

"imposed an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Hardaway*, 734 F.3d at 743 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). Courts consider two factors when making this determination: "the combined import of the duration of the segregative confinement *and* the conditions endured." *Id.* at 743 (citing *Marion*, 559 F.3d at 697-98) (emphasis in original)).

Absent exceptionally harsh conditions, short periods of confinement in segregation rarely give rise to a protected liberty interest. *Id.* at 743. However, a liberty interest may arise from longer terms of confinement, triggering the need for further factual inquiry into the conditions. *See Marion*, 559 F.3d at 698 (holding that the issue of whether 240 days in disciplinary segregation would implicate a protected liberty interest could not be decided at the pleading stage). Plaintiff remained in segregation for almost six months under conditions that allegedly posed an unreasonable risk of harm to him. He was housed with one of the inmates he was accused of fighting. The two were kept behind a steel door. Several other inmates were forced to endure the same punishment. During this time period, three inmates were allegedly murdered by their cellmates at Menard. Given the duration and conditions of Plaintiff's confinement, the Court finds that this claim warrants further review. *See Marion*, 559 F.3d at 699.

Plaintiff shall be allowed to proceed with **Count 1** against Defendants Veath and Lee. He has named no other defendants in connection with this claim, and the Court finds that no claim has been stated against anyone else. For this reason, Count 1 shall be dismissed without prejudice against all other defendants.

**Count 2**

Plaintiff's related Eighth Amendment failure to protect claim (**Count 2**) against Defendants Jane/John Doe (placement officer) and Jane/John Doe (internal affairs officer) shall

also receive further review. According to the complaint, these officials were responsible for placing Plaintiff in a cell with Antoine Brantley. They were allegedly left alone to harm or kill each other.

The Eighth Amendment protects prisoners from cruel and unusual punishment. U.S. CONST., amend. VIII. These protections extend to the conditions of a prisoner's confinement, including those conditions that pose a substantial risk of serious harm to the inmate's health and safety. *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012). The Seventh Circuit has made it clear that prison officials have a duty to protect prisoners "from violence at the hands of other inmates." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal citations omitted); *see also Pinkston v. Madry*, 440 F.3d 879, 889 (7th Cir. 2006).

In order for a plaintiff to succeed on a failure to protect claim, he must show that he is incarcerated under conditions posing a substantial risk of serious harm, and that the defendants acted with "deliberate indifference" to that danger. *Id.; Pinkston*, 440 F.3d at 889. A plaintiff also must prove that prison officials were aware of a specific, impending, and substantial threat to his safety, often by showing that he complained to prison officials about a *specific* threat to his safety. *Pope v. Shafer*, 86 F.3d 90, 92 (7th Cir. 1996).

The allegations suggest that these officials knew that placing Plaintiff in a cell with the very inmate he was accused of fighting posed a significant risk of harm to both inmates. On this basis, Plaintiff shall be allowed to proceed with **Count 2** against Defendants Jane/John Doe (placement officer) and Jane/John Doe (internal affairs officer). The complaint does not suggest that any other defendants were personally involved in the placement decision. Accordingly, this claim shall be dismissed without prejudice against all other defendants.

**Count 3**

The complaint articulates no viable claim against Defendants Harrington, Oakley, Johnson, or Godinez for denying Plaintiff's grievances (**Count 3**). According to the complaint, Plaintiff's grievances were denied as untimely based on internal delays at Menard and because Menard officials were "in cahoots" with other IDOC officials. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause" of the Fourteenth Amendment. *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011) (citations omitted). The Constitution requires no procedure at all, and the failure of state prison officials to follow their own procedures does not, standing alone, violate the Constitution. *Maust v. Headley,* 959 F.2d 644, 648 (7th Cir. 1992); *Shango v. Jurich*, 681 F.2d 1091, 1100-01 (7th Cir. 1982). Absent any personal involvement in the underlying deprivation of Plaintiff's constitutional rights, the alleged mishandling of Plaintiff's grievances states no claim for relief. For this reason, **Count 3** shall be dismissed without prejudice against Defendants Harrington, Oakley, Johnson, Godinez, and all other defendants.

**Count 4**

Plaintiff's claim that he was denied access to the courts (**Count 4**) when C/O Hormann's affidavit was confiscated from him is unavailing, even at this early stage in the case. The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds v. Smith*,

430 U.S. 817, 828 (1977)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992), *cert. denied*, 506 U.S. 1062 (1993). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid*, 969 F.2d at 603.

To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

The complaint draws no connection between the temporary confiscation of C/O Hormann's affidavit and Plaintiff's inability to pursue any particular claim. The allegations suggest that this lawsuit was delayed when the affidavit was confiscated. However, Plaintiff could have filed this lawsuit without the affidavit. Despite the fact that he waited until it was returned, Plaintiff was still able to file this suit. In other words, he has identified no underlying claim that was lost. **Count 4** states no claim upon which relief may be granted and shall therefore be dismissed without prejudice against all of the defendants.

**Count 5**

Plaintiff shall be allowed to proceed with his equal protection claim (**Count 5**) against Defendants Veath and Lee at this early stage. In the complaint, he alleges that African-American inmates are consistently denied the opportunity to call witnesses at their prison disciplinary hearings, while Caucasian inmates are allowed to do so. Racial discrimination by a state actor violates the Equal Protection Clause of the Fourteenth Amendment unless it is narrowly tailored to serve a compelling government interest. *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000). To state a claim, Plaintiff must allege that a state actor purposefully treated him differently than persons of a different race. *Id.* The complaint suggests that Defendants Veath and Lee discriminated against him because of his race. For this reason, **Count 5** shall receive further review. No other defendants are implicated in this claim. Therefore, Count 5 shall be dismissed without prejudice against all other defendants.

**Count 6**

The complaint fails to articulate a conspiracy claim (**Count 6**) against any of the defendants. The opening paragraph of the complaint refers to 28 U.S.C. §§ 1985 and 1986, two statutes that address conspiracies that interfere with civil rights. Beyond this reference, the complaint develops no conspiracy claim against any particular defendant or group of defendants. The most specific reference to a conspiracy is Plaintiff's allegation that Defendant Johnson was "in cahoots" with Menard officials to deny Plaintiff's grievances. This single allegation is insufficient to support a conspiracy claim against Defendant Johnson, or anyone else, under either statute.

In order to proceed on either claim, the claim must have some "arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). With respect to both claims, the

complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Therefore, the conspiracy claims under Sections 1985 and 1986 fail. **Count 6** shall be dismissed without prejudice against all of the defendants for failure to state a claim upon which relief may be granted.

### Discovery of Unknown Parties

Plaintiff shall be allowed to proceed with Count 2 against Defendants Jane/John Doe (placement officer) and Jane/John Doe (internal affairs officer). However, both parties must be identified with particularity before service of the complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Harrington shall remain in this action, in his official capacity only, for purposes of responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Defendants Jane/John Doe (placement officer) and Jane/John Doe (internal affairs officer) are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the complaint.

### Pending Motion

Plaintiff has filed a motion for recruitment of counsel (Doc. 11), which shall be **REFERRED** to a United States Magistrate Judge for a decision.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNTS 3, 4,** and **6** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS ALSO ORDERED** that Defendants **HARRINGTON (in his individual capacity), GODINEZ, JOHNSON,** and **OAKLEY** are **DISMISSED** without prejudice.

With respect to **COUNTS 1, 2,** and **5**, the Clerk of Court shall prepare for Defendants **HARRINGTON (in his official capacity), VEATH** and **LEE**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

Service shall not be made on Defendants Jane/John Doe (placement officer) and Jane/John Doe (internal affairs officer) until such time as Plaintiff has identified these defendants by name in a properly filed motion for substitution of parties.  Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the names and service addresses for these individuals.

If the Defendant cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk.  Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Plaintiff shall serve upon Defendant (or upon defense counsel once an appearance is entered), a copy of every further pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of any document was served on Defendant or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendant is **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings, including a decision on Plaintiff's motion for recruitment of counsel (Doc. 11) and discovery aimed at identifying the unknown defendants.

Further, this entire matter is hereby **REFERRED** to a **United States Magistrate Judge** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff.

Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 9, 2015**

**s/J. Phil Gilbert**
**U.S. District Judge**
