IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TONY McGRUDER,

    Plaintiff,

vs.

TIMOTHY VEATH,
TRACY LEE,
BRETT MEYERHOFF,
JOSEPH COWAN, and
GEORGE HOLTON,

    Defendants.

Case No. 15-cv-0255-MJR-SCW

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

### I. INTRODUCTION

Tony McGruder, currently confined at Pontiac Correctional Center within the Illinois Department of Corrections, started this lawsuit with a pro se complaint filed under 42 U.S.C. § 1983. McGruder alleges that his Fourteenth and Eighth Amendment rights were violated when he was not allowed to call a witness at a disciplinary proceeding and was placed in segregation with another inmate he was accused of fighting. The case comes before the Court on cross-motions for summary judgment motions (Docs. 99, 105) filed by McGruder and the five Defendants remaining in the suit – Timothy Veath, Tracy Lee, Brett Meyerhoff, Joseph Cowan, and George Holton.[1]

---

[1] The case originally was assigned to District Judge J. Phil Gilbert. Judge Gilbert's Order on threshold review of the complaint and subsequent Orders

The motions are fully briefed and ripe for disposition. As the evidence in the record is not sufficient to allow McGruder to recover on any of his claims, his motion for summary judgment (Doc. 99) is **DENIED,** and Defendants' motion for summary judgment (Doc. 105) is **GRANTED**.

## II. OVERVIEW OF KEY FACTS AND ALLEGATIONS

The same facts govern both summary judgment motions. At the times relevant to this suit, Tony McGruder (Plaintiff), who is black (Doc. 99, p. 12), was incarcerated at Menard Correctional Center (Menard) (Doc. 1, p. 5). On December 9, 2012, Plaintiff was taken to segregation for a fighting incident that occurred in the meal hall that day (Doc. 116, p. 2). As a result of the incident, Plaintiff was given a disciplinary ticket (*id.* at 3).

According to Plaintiff, after receiving the ticket, he wrote on the bottom of it that he requested Correctional Officer Hormann to be called as a witness on his behalf (*id.*). Plaintiff believed that this testimony would acquit him of the charges. Plaintiff tore off the bottom of the ticket and placed it in the door of his cell to be picked up with the rest of his mail (*id.*). He did this so that his request for a witness would be delivered to the Adjustment Committee (*id.*). On the same day, Plaintiff also prepared a handwritten statement requesting a continuance of the Adjustment Committee hearing in order to allow Hormann to be called (*id.*).

---

dismissed certain claims/defendants and substituted other defendants. As defendants answered, they provided additional information as to their names. For instance, the answer filed by Defendant Veath (Doc. 42)--sued as "Lt. T. Veath"--clarified that his name is Timothy Veath. The Clerk's Office shall correct the docket sheet to use the names/spellings in the caption on this Order.

On December 14, 2012, Plaintiff received a second, re-written, disciplinary ticket (*id.*). On December 17, 2012, Plaintiff appeared before the Adjustment Committee for his disciplinary hearing (*id.* at 4). The disciplinary hearing was not continued, and according to Plaintiff, he was not allowed to call any witnesses, including Hormann (*id.*). Plaintiff was found guilty by the Adjustment Committee and sentenced to six month in segregation, *inter alia* (Doc. 99, p. 12). The Adjustment Committee report indicates that Plaintiff did not request a witness (*id.*). Defendants Timothy Veath and Tracy Lee were the individuals making up the Adjustment Committee (*id.*).

Plaintiff was placed in segregation with an inmate named Antoine Brantley (Doc. 116, p. 4). Inmate Brantley was among the other inmates involved in the December 9th fight that led to Plaintiff's segregation (*id.*). According to Plaintiff, six other inmates involved in the fight were double-celled in segregation (*id.*). Plaintiff was celled with Inmate Brantley until June 6, 2013 (Doc. 99-2, p. 3). Brantley corroborates Plaintiff's statements regarding cell placement in an affidavit (Doc. 99, p. 13). According to Plaintiff's deposition testimony, prior to being placed in the segregation cell on December 17, 2012, Inmate Brantley had never made any threats or violent gestures toward Plaintiff (Doc. 160-1, p. 15). Plaintiff had never named Brantley as an enemy (*id.*). On December 17, 2012, Defendant Brett Meyerhoff was a correctional clerk and supervisor/placement officer at Menard (Doc. 106-5, p. 2). On the same date, Defendant Joseph Cowan was working as a shift supervisor, and Defendant George Holton was working as the Lieutenant on North 2 (Doc. 106-3, p. 2; Doc. 106-4, p. 2).

In 2012, Menard's segregation standards required that each cell have a bed with clean bedding, running water, adequate lighting for reading and observation, heat, and ventilation (Doc. 106-2, p. 22 – 24). Under these standards, segregation inmates are to be given access to cleaning materials, allowed to shower and shave at least once a week, given state-issued necessities, given clean laundry, and allowed certain personal property items (*id.* at 23). Plaintiff has provided no evidence as to the condition of his segregation cell. Nor has he provided evidence that he was physically or mentally harmed by Brantley while in the same cell, or that the two inmates got into any physical or verbal altercations.

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only "if the admissible evidence considered as a whole shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (internal quotation marks omitted),** *citing* **FED. R. CIV. P. 56(a).** *See also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).**

The party seeking summary judgment bears the initial burden of showing -- based on the pleadings, affidavits, and/or information obtained via discovery -- the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).** After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986), *quoting* FED R. CIV. P. 56(e)(2). A fact is material if it is outcome determinative under applicable law. *Anderson*, 477 U.S. at 248; *Ballance v. City of Springfield, Ill. Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. *Accord Bunn v. Khoury Enterpr. Inc.*, 753 F.3d 676 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012); *Righi v. SMC Corp.*, 632 F.3d 404, 408 (7th Cir. 2011); *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542 (7th Cir. 2014).

IV. ANALYSIS

    A. <u>Fourteenth Amendment Due Process Claim<br>Against Defendants Veath and Lee</u>

Plaintiff alleges that Defendants Veath and Lee violated his procedural due process rights under the Fourteenth Amendment by not allowing him to call any

witnesses, particularly Hormann, at the Adjustment Committee hearing (Doc. 12, p. 4). The Fourteenth Amendment provides, in relevant part, that no state shall "deprive any person of life, liberty, or property, without due process of law." **U.S. CONST. amend. XIV, § 1**. For a prisoner plaintiff to recover on a claim challenging the process afforded in a prison disciplinary proceeding, the facts must demonstrate (1) constitutionally deficient procedural due process as to the proceeding, and (2) a resulting deprivation of a liberty or property interest caused by the defendants. *Scruggs v. Jordan*, **485 F.3d 934, 939 (7th Cir. 2007)**. As to the second factor, placement in disciplinary segregation implicates a liberty interest when the conditions of segregation impose "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Connor*, **515 U.S. 472, 485 (1995)**.

In determining whether a liberty interest is implicated, courts look to "the combined import of the duration of the segregative confinement *and* the conditions endured." *Hardaway v. Meyerhoff*, **734 F.3d 740, 743 (7th Cir. 2013) (quoting** *Marion v. Columbia Correctional Inst.*, **559 F.3d 693, 697 (7th Cir. 2009) ("***Marion I***")) (emphasis in original) (internal quotations omitted)**. Though short terms of confinement in segregation, absent "exceptionally harsh conditions," rarely implicate a liberty interest, an interest may arise in the instance of a long term of confinement combined with atypical and significant hardships. *Hardaway*, **734 F.3d at 743**.

Here, Plaintiff cannot recover on his due process claim, as there is no evidence sufficient to allow a jury to find that Plaintiff suffered a deprivation of a liberty interest.

Defendants have set forth evidence in the form of standards which demonstrate that Menard is to provide a certain level of quality for inmates housed in segregation. Certainly, if the cited standards were adhered to, the conditions of segregation in Menard would not constitute an atypical and significant hardship on an inmate housed in segregation.

At trial, Defendants would not be able to rely on the standards alone to prove the actual conditions under which Plaintiff lived while housed in segregation. Plaintiff, however, having had the opportunity, has not objected to this Court considering the standards as evidence of how Menard officials maintain the condition of segregation. More importantly, Plaintiff has failed to put forward any evidence whatsoever, either in his response to Defendants' summary judgment motion or in support of his own summary judgment motion, that describes the condition of his segregation cell, including whether he was detrimentally impacted by being housed with inmate Brantley. The record is devoid of any evidence to suggest that Plaintiff suffered an atypical and significant hardship in relation to the ordinary incidents of prison life while housed in segregation.

The only evidence before the Court is the standards establishing the baseline conditions of segregation. While the standards are not direct evidence of what the conditions of segregation during Plaintiff's stay actually were, they demonstrate what the conditions are supposed to be. The Court has no evidence to suggest that the segregation conditions experienced by Plaintiff were anything different from or less than

the standards set forth. On this record, no jury could reasonably find that Plaintiff suffered an atypical and significant hardship compared to ordinary prison life. Therefore, no jury could reasonably find that Plaintiff suffered a deprivation of a liberty interest. For these reasons, summary judgment is appropriate as to Defendants Veath and Lee on Plaintiff's due process claim.

> **B. Fourteenth Amendment Equal Protection Claim Against Defendants Veath & Lee**

Plaintiff also alleges that Veath and Lee violated his rights under the Fourteenth Amendment's Equal Protection Clause by denying him an opportunity to call witnesses at his disciplinary hearing, based on his race. The Equal Protection Clause provides that "[n]o state shall … deny to any person within its jurisdiction the equal protection of the laws." **U.S. CONST. amend. XIV, § 1.** The clause protects one from disparate treatment based upon his or her status in a protected class. *Greer v. Amesqua*, **212 F.3d 358, 370 (7th Cir.),** *cert. denied,* **531 U.S. 1012 (2000)**.

Generally, to prevail on a claim for an Equal Protection violation, a prisoner must demonstrate that he is a member of a protected class and that state actors treated members of the prisoner's class less favorably than people not in the class who are similarly situated. *See Brown v. Budz*, **398 F.3d 904, 916 (7th Cir. 2005)**; *Harris v. Greer*, **750 F.2d 617, 618–19 (7th Cir. 1984)**. However, "isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause." *Shango v. Jurich*, **681 F.2d 1091, 1104 (7th Cir. 1982).** Such events "[a]t most … demonstrate[] 'a

mere inconsistency in prison management … which … may not in itself constitute a cognizable equal protection claim.'"  Id. **(quoting *Durso v. Rowe*, 579 F.2d 1365, 1372 (7th Cir. 1978))**.

Based on the record before the Court, Plaintiff cannot recover on his equal protection claim.  Even assuming that Plaintiff properly asked and was not allowed to call a witness as his disciplinary hearing, there is no evidence in the record to allow a jury to reasonably infer that the refusal to allow a witness was *based on Plaintiff's race*. An unreported recent case from the Seventh Circuit is instructive here.

In *West v. Kingsland*, **679 Fed. App'x 482, 483 (7th Cir. 2017),** a Muslim prisoner brought an equal protection claim against a prison guard, and the evidence demonstrated that, while the prisoner was fasting, the guard would not let the prisoner out of his cell during the time allowed for breakfast.  While inmates who did not eat breakfast were typically let out of their cells during breakfast to sign up for activities, the defendant guard, Kingsland, would not let out inmate West.  The court found that the inmate could not succeed on an equal protection claim, emphasizing:

> Altogether missing from this record is evidence that only—or mostly or even a few—Muslim inmates stayed locked up during Kingsland's shift while all other prisoners who did not eat breakfast enjoyed time out of their cells.  At best West repeatedly *accused* Kingsland of keeping him confined during his Ramadan fast only because of his religion, but he points to nothing in the record substantiating this speculation.

*Id.* **at 486**.

Similarly, here, there is no evidence that only black inmates, mostly black

inmates, or even a few black inmates were not allowed to call witnesses at disciplinary hearings while inmates of other races were allowed to do so. Additionally, there is no evidence of racist remarks or actions that might demonstrate that Veath and Lee were motivated by a racial animus. Plaintiff has simply accused the Defendants of not allowing him to call a witness based on his race. There is no evidence in the record to bolster this allegation. There is not sufficient evidence to allow a jury to reasonably find that Defendants Veath and Lee violated the Equal Protection Clause in their treatment of Plaintiff.

Stated another way, Plaintiff has not presented admissible evidence that he was treated differently than white inmates or that Defendants were motivated by a discriminatory bias, as needed to support his equal protection claim. *See, e.g., Gunville v. Walker,* **583 F.3d 979, 985 (7th Cir. 2009);** *Chavez v. Illinois State Police,* **251 F.3d 612, 645 (7th Cir. 2001);** *Greer,* **212 F.3d at 370.** For these reasons, his equal protection claim fails to survive summary judgment.

### C. Failure-to-Protect Claim Against Defendants Meyerhoff, Cowan, and Holton

Plaintiff alleges that Defendants Meyerhoff, Cowan, and Holton[2] violated his Eighth Amendment rights by failing to protect him from an unreasonable risk of harm, when they placed him in a cell for six months with an inmate he was accused of fighting – Antoine Brantley (Doc. 12, p. 5, 7–8). Although, under the Eighth Amendment, prison

---

[2] Originally, the defendants in this count of the complaint were listed as "John Does." However, the Court ordered Defendants Meyerhoff, Cowan, and Holton substituted for the John Does on October 9, 2015 (*see* Doc. 45).

officials are required to protect inmates from one another, not every injury caused by another inmate translates into constitutional liability for prison officials responsible for the victim's safety. *Farmer v. Brennan*, **511 U.S. 825, 833-34 (1994)**; *Zarnes v. Rhodes*, **64 F.3d 285, 289 (7th Cir. 1995)**.

To recover on a failure-to-protect claim, an inmate must demonstrate that prison officials were "deliberately indifferent" to a sufficiently serious risk of harm to the inmate. *Mathis v. Fairman*, **120 F.3d 88, 91 (7th Cir. 1997);** *Zarnes*, **64 F.3d at 290**. A claim that a prison official was deliberately indifferent to such a risk has both an objective component and a subjective component. *Farmer*, **511 U.S. at 834**. The objective component is that the inmate must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer* **511 U.S. at 834**. To satisfy this prong, a plaintiff must allege not only that he experienced, or was exposed to, a serious harm, but also that there was a substantial risk beforehand that serious harm might actually occur. *Brown*, **398 F.3d at 910.** Courts have found that an inmate who has been assaulted has experienced a substantially serious harm. *Id.*

In this case, there is insufficient evidence for Plaintiff to recover on his failure-to-protect claim. There is not enough evidence in the record to allow a reasonable jury to find that Plaintiff was harmed by being celled with Brantley or even that he was under a serious risk of harm from his cell arrangement in segregation. At his deposition, Plaintiff testified that he had never been threatened by Brantley prior to being celled with him, and that Brantley had not previously made violent gestures

toward him. The only evidence Plaintiff cites to support his claim is that Brantley was one of the inmates Plaintiff was *accused* of fighting on December 9th. But there is no evidence that Plaintiff actually fought Brantley on December 9th, and Plaintiff's own deposition testimony indicates that he *did not* actually fight Brantley. Plaintiff also admitted that he never had Brantley declared an enemy of his.

Nor is there any evidence that Plaintiff was harmed from being celled with Brantley. Plaintiff has provided no evidence, either in his response to Defendants' motion or in his own summary judgment motion, indicating that he and Brantley ever fought, physically or verbally. Nowhere does Plaintiff suggest that he was threatened or harassed by Brantley. In fact, evidence tends to suggest that the two inmates were able to engage in some amount of cooperation. Indeed, it bears note that Brantley swore an affidavit for Plaintiff in support of this lawsuit.

Plaintiff argues that the fact that six inmates involved in the December 9th fight were housed together in segregation indicates that the defendants who placed them intended for them to fight one another. This evidence of cell placement alone is insufficient to allow a jury to reasonably infer that Defendants made the placements with the intent for the inmates to fight. Even assuming *arguendo* that Meyerhoff, Cowan, and Holton were responsible for placing these inmates in segregation, and assuming they had the menacing intent Plaintiff contends, there is no evidence that Plaintiff was harmed by his placement with Brantley or even that he was under a serious risk of harm due to such placement.

## V. CONCLUSION

There is simply insufficient evidence in the record to allow Plaintiff to recover on his claims. Accordingly, the Court **GRANTS** Defendants' motion for summary judgment (Doc. 105) and **DENIES** Plaintiff's motion for summary judgment (Doc. 99). No claims remain following entry of this Order. The Clerk of Court shall enter judgment in favor of Defendants Veath, Lee, Meyerhoff, Cowan, and Holton and against Plaintiff McGruder.

IT IS SO ORDERED.

DATED December 29, 2017.

                                            *s/ Michael J. Reagan*
                                            Michael J. Reagan
                                            United States District Judge